IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARQUIS M. DAVIS,

                Petitioner,

        vs.

SCOTT MCEWEN, Warden, California
State Prison, Lancaster,[1]

                Respondent.

No. 2:09-cv-03510-JKS

MEMORANDUM DECISION
and
ORDER [Re:  Motion at Docket No. 37]

Marquis M. Davis, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254.  Davis is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Lancaster. Respondent has answered, and Davis has replied.[2]

## I.  BACKGROUND/PRIOR PROCEEDINGS

In November 2006 Davis pled guilty to attempted murder (Cal. Penal Code § 664/187) with an enhancement for the use of a firearm (Cal. Penal Code § 12022.53).  On May 14, 2007, Davis filed a motion to withdraw his guilty plea on the ground that the victim had recanted his identification of Davis as the shooter.  On June 21, 2007, after holding a hearing at which the victim testified, the Solano County Superior Court denied the motion and sentenced Davis to the agreed sentence of twenty-five years in prison.  The California Court of Appeal, First Appellate District, affirmed the denial of Davis's motion, but granted a minor correction in the sentence, in

---

[1]Scott McEwen, Warden (A), California State Prison, Lancaster, is substituted for R. Lopez, Warden, California State Prison, Corcoran.  Fed. R. Civ. P. 25(d).

[2] At Docket No. 37 Davis has inexplicably filed a motion to extend the time to reply.

an unpublished decision,[3] and the California Supreme Court denied review on January 28, 2009.

On August 21, 2009, Davis filed a petition for habeas relief in the Solano County Superior Court,

which was summarily denied without opinion or citation to authority in an unreported decision.

The California Supreme Court likewise summarily denied Davis's petition for habeas relief on

June 9, 2010.  While his petition for habeas relief was pending before the California Supreme

Court, Davis timely filed his Petition for relief in this Court on December 8, 2009.

The California Court of Appeal summarized the proceedings below:

Sean Wydermyer[FN2] testified at the preliminary examination that on
December 13, 2004, he went to a house in Vallejo after agreeing by cell phone to sell
cocaine to [Davis].  Inside the house, [Davis] shot Wydermyer six times.  Believing
he was about to die, Wydermyer identified [Davis] to police as the shooter.  [Davis]
was charged by information with the willful, deliberate, and premeditated attempted
murder of Wydermyer and that the offense involved the personal use of a firearm.

Things began to heat up in October 2006.  [Davis] filed an in limine motion
for a *Kelly-Frye* hearing "into the scientific validity of anticipated expert testimony
with respect to the technical ability of cellular telephone companies to pinpoint the
location of cell phones at times that calls are placed to or from them."  [Davis]
argued that discrediting the anticipated testimony would bolster his alibi defense and
impeach Wydermyer's identification:  "If Davis was in fact not in Vallejo, he could
not have done the shooting.  There are a number of reasons to distrust the victim's
identification of Davis as the shooter: he is a drug dealer, and seems to have amassed
plenty of enemies other than Davis who might have been the real assailants."  The
prosecution was also busy with its own motion, this one to amend the information to
add an additional count of assault with a firearm (§ 245, subd. (a)(2)), with the same
personal use enhancement.

On November 2, the court conducted a hearing at which it heard extensive
argument on the motions and other pretrial matters.  The court denied [Davis's]
motion, but it left open the possibility of a trial hearing on the cell phone issue
pursuant to Evidence Code section 402.  The prosecution's motion to amend the
information was in effect continued to November 6.

November 6, [Davis's] trial date, was a busy day for all concerned.  The
proceedings commenced with the court denying [Davis's] motion for a continuance.
Concerning the prosecution's request to amend the information, defense counsel
stated "I'm essentially estopped as a competent lawyer from opposing, because it

---

[3] *People v. Davis*, A118622, 2008 WL 4763340 (Cal. Ct. App. Oct. 31, 2008).

does give the jury, in a case where I think we all agree the evidence is substantial against my client, the option of finding a lesser offense . . . ."  However, counsel was uneasy at "a compromised verdict possibility."

The prosecutor responded:  "If he's objecting, I'll just withdraw this thing. We'll just go on the attempted murder.  I feel really confident about this case.  I'll withdraw it."  The court observed, "It's been withdrawn.  Very good."  But moments later, defense counsel told the court "I do want it.  I do want it."  The court then ordered the amended information "filed," and [Davis] entered pleas of not guilty to both counts and all enhancements.

Selection of a jury then began.  Before selection was completed, [Davis] decided to accept a plea bargain offered by the prosecution, but only up to the point a jury was sworn.  The deal was that [Davis] would plead guilty to the attempted murder charge—without the willful, deliberate, and premeditated clause—and be sentenced to the low term of five years.  He would admit the enhancement to that count, and be sentenced to an additional 20 years.

[Davis] executed a change of plea form that included the waivers and admonitions required by *Boykin v. Alabama* (1969) 395 U.S. 238, *In re Tahl* (1969) 1 Cal.3d 122, and *In re Yurko* (1974) 10 Cal.3d 857.  The court accepted [Davis's] change of plea, noting, "I have reviewed the waiver form.  There does appear to be a knowing, intelligent and voluntary waiver of the various statutory and constitutional rights."  Counsel for both sides agreed that there was "a factual basis [for the plea] on the preliminary hearing transcript."  The assault count and remaining enhancement allegations were dismissed.

Sentencing was initially set for November 30, 2006, but was repeatedly continued, until May 24, 2007.

On May 14, [Davis] filed a motion requesting leave to withdraw his guilty plea on the ground that Wydermyer had recanted his identification of [Davis] as his assailant.  The motion was supported with a declaration by Wydermyer in which he stated:  "Several months ago, I learned that Davis had pleaded guilty to the charge of having shot me . . . .  I have determined that I may have been mistaken in saying, and later in testifying, that Davis shot me.  I am now uncertain of the truth of my statements in this regard.  I myself have a doubt as to whether Davis shot me.  I would be prepared to testify to this doubt to any Court or any jury should Davis be permitted to withdraw his guilty plea and go to trial."

The prosecution filed opposition to the motion, arguing that Wydermyer's change of mind did not constitute good cause for allowing [Davis] to withdraw his plea.

On May 24, [Davis's] motion was the subject of an extensive hearing.  After considerable discussion about the development of the case and the timing and circumstances of defense counsel learning of Wydermyer's change of mind, Wydermyer took the stand.  He was initially examined briefly by the court and then by defense counsel about his declaration.  Wydermyer testified that it was he who approached [Davis's] counsel.  He was not threatened to change his mind.

The court interjected to ask: "I'm looking at your declaration.  Among other things, you say that 'I have determined that I may have been mistaken in saying and later testifying that Mr. Davis shot me.'  [¶]  . . .  [¶]  You don't know if you were mistaken, but you may have been mistaken; is that it?"  Wydermyer replied, "Yeah." When defense counsel resumed questioning.  Wydermyer conceded that [Davis] was in the house at the time of the shooting, but Wydermyer was not sure he was the actual shooter.

On cross-examination by the prosecutor, Wydermyer testified that he had previously made three positive identifications of [Davis] as the man who shot him. The gist of his changed position was that he knew there were two people in the house—[Davis] and another man—at the time he was shot.  Wydermyer was certain that the other man did not shoot him.  But Wydermyer was now allowing for the possibility of a third man, who might have been the shooter:

"Q.  Looking at your transcript of what happened at the prelim, do you remember testifying that the person who shot you just before that maybe just walked into a bathroom?

"A.  Yeah.

"Q.  Okay.  And the person who walked into the bathroom just before you got shot was the defendant, right, Mr. Davis, right?

"A.  Yes.

"Q.  So you know that and you are sure of that, right?

"A.  Yes.

"Q.  Did you ever see anybody in the house go into that bathroom?

"A.  No, but I can't say there wasn't no one already in there.  I didn't thoroughly search anything."  As Wydermyer put it, "I can't say it was him or not. I really didn't look at his face.  I just went by who I seen went in the bathroom."  But he did not actually see a third person.

On redirect, Wydermyer testified that he was not repudiating what he previously said, but "I have a terrible memory . . . after the incident," and what he really recalls is that "I was just looking at a weapon.  That's all I was looking at."

After defense counsel stated "I don't want to call another witness," the court heard argument on the motion.  The court then ruled as follows: "Well, Penal Code Section [1018] authorizes motions to withdraw guilty pleas, provides basically that a trial court may grant such a motion for a good cause shown, and as a general rule, a plea of guilty may be withdrawn for mistake, ignorance or inadvertence or any other factor overreaching the defendant's free and clear judgment, meaning at the time he entered the plea.  The defendant has the burden of proving grounds for withdrawal of the guilty plea by clear and convincing evidence . . . .

"I think the general rule . . . is that cases involving a victim's recantation, our appellate courts have cautioned repeatedly that a witness's offer to retract sworn testimony should be viewed with suspicion and given little credence.

"And I listened to this gentleman, and I think that Mr. Wydermyer basically has a little bit of buyer's remorse.  After all, what he says is the same in the declaration that [defense counsel] prepared and he signed, he basically said the same

4

thing here ten minutes ago, that is, that he may have been mistaken in saying and later testifying that the defendant, Mr. Davis, shot me.

"I don't think you've carried your burden of proof. I think [Davis] got what he asked for. He got the benefit of his bargain. He got a case, which could have resulted in over 40 years to life, reduced to a case where he was going to receive 25 years.

"So your motion to withdraw his previously entered plea is denied."

The court then arraigned [Davis] for imposition of sentence, and imposed an aggregate term of 25 years in state prison in accordance with the parties' plea agreement.[4]

## II.  GROUNDS RAISED/DEFENSES

In his Amended Petition Davis raises four grounds:  (1) ineffective assistance of appellate counsel; (2) ineffective assistance of trial counsel; (3) that the guilty plea was involuntary; and (4) that the trial court abused its discretion in denying the motion to withdraw the plea. Respondent does not assert any affirmative defenses.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the

---

[4] *Id.* at *1-4.

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

time of the relevant state-court decision."[6]  The holding must also be intended to be binding upon

the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

power of the Supreme Court over federal courts.[7]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[8]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[9]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[10]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[11]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

---

[6] *Williams*, 529 U.S. at 412 (alteration added).

[7] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[8] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam); *Kessee v. Mendoza-Powers*, 574 F.3d 675, 678-79 (9th Cir. 2009); *Moses v. Payne*, 555 F.3d 742, 753-54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[9] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[10] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[11] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

and injurious effect or influence in determining the outcome.[12]  Because state court judgments of conviction and sentence carry a presumption of finality and legality, the petitioner has the burden of showing by a preponderance of the evidence that he or she merits habeas relief.[13]

The Supreme Court recently underscored the magnitude of the deference required:

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244).  *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal.  *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[14]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[15]  State appellate court decisions that summarily affirm a lower court's opinion without

---

[12] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[13] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citations omitted); *see Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (per curiam) (stating that a federal court cannot grant "habeas relief on the basis of little more than speculation with slight support").

[14] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[15] *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)); *cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . ").

explanation are presumed to have adopted the reasoning of the lower court.[16]  This Court gives

the presumed decision of the state court the same AEDPA deference that it would give a

reasoned decision of the state court.[17]

Under California's unique habeas procedure, a prisoner who is denied habeas relief in the

superior court files a new original petition for relief in the court of appeal.  If denied relief by the

court of appeal, the defendant has the option of either filing a new original petition for habeas

relief or a petition for review of the court of appeal's denial in the California Supreme Court.[18]

This is considered as the functional equivalent of the appeal process.[19]  Under AEDPA, the state

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption

by clear and convincing evidence.[20]  This presumption applies to state-trial courts and appellate

courts alike.[21]

---

[16] *Ylst*, 501 U.S. at 802-03 ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."); *cf. Richter*, 131 S. Ct. at 784 ("As every Court of Appeals to consider the issue has recognized, determining whether a states court's decision resulted from an unreasonable legal or factual conclusion does not require that there an opinion from the state court explaining the state court's reasoning.").

[17] *See Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

[18] *See Carey v. Saffold*, 536 U.S. 214, 221-22 (2002) (citations omitted) (discussing California's "original writ" system).

[19] *See id.* at 222 ("Thus, typically a prisoner will seek habeas review in a lower court and later seek appellate review in a higher court . . . .").

[20] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[21] *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004) ("Stevenson does not address these factual findings, let alone challenge them with clear and convincing evidence. Accordingly, we presume them to be correct." (citing 28 U.S.C. § 2254(e)(1); *Pollard v. Galaza*,

IV.  DISCUSSION

Davis raised the question of the voluntariness of his plea and the denial of his motion to

withdraw the plea in his direct appeal.  Davis raised his ineffective assistance of counsel claims

and his claim that the Solano County Superior Court abused its discretion in denying his motion

to withdraw his guilty plea in his state habeas petitions.  Although this Court normally addresses

the grounds raised *in seriatim*, in this case the Court will address Davis's third and fourth

grounds first and, because they are inextricably intertwined, discuss them together.  Also,

because Davis's first ground, ineffective assistance of appellate counsel, is in part dependent

upon his second ground, ineffective assistance of trial counsel, the Court will discuss Davis's

first ground last.

Ground 3/Ground 4:  Withdrawal of the Guilty Plea

Davis contends that his guilty plea was involuntary and that the Solano County Superior

Court abused its discretion in denying his motion to withdraw his plea.  The California Court of

Appeal rejected Davis's arguments, holding:

> Section 1018 specifies that "On application of the defendant at any time
> before judgment . . ., the court may, . . . for a good cause shown, permit the plea of
> guilty to be withdrawn and a plea of not guilty substituted."  Under this statute,
> "mistake, ignorance or any other factor overcoming the exercise of free judgment is
> good cause for withdrawal of the plea, but good cause must be shown by clear and
> convincing evidence.  [Citations.]  The decision to grant the motion to withdraw the
> plea lies within the sound discretion of the trial court.  [Citation.]"  (*People v.
> Castenada* (1995) 37 Cal.App.4th 1612, 1617.)
> Two additional factors are relevant.  "'When a defendant is represented by
> counsel, the grant or denial of an application to withdraw a plea is purely within the
> discretion of the trial court after consideration of all factors necessary to bring about
> a just result.  [Citations.]  On appeal, the trial court's decision will be upheld unless
> there is a clear showing of abuse of discretion.  [Citations.]'  [Citation.]  'Guilty pleas

290 F.3d 1030, 1035 (9th Cir. 2002))).

resulting from a bargain should not be set aside lightly, and finality of proceedings should be encouraged.' [Citation.]" (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.)

So, in trying to get the denial of his motion reversed, [Davis] faces formidable obstacles. Throughout these proceedings [Davis] was represented by an experienced attorney who demonstrated skill, resourcefulness, and the proper zeal for the defense responsibility he undertook. [Davis's] motion to withdraw his guilty plea not only had to be supported by good cause, but also by clear and convincing evidence of that good cause. Finally, the trial court's decision may be overturned only if [Davis] satisfies the most stringent test for reversal.

[Davis] contends that he can meet this standard. He argues that "a serious injustice will occur if this Court affirms the denial of appellant's motion to withdraw his plea. Without question, Wydermyer's recantation bears directly on the most fundamental issue—appellant's innocence . . . . [I]n light of Wydermyer's recantation, affirmance of the denial of the motion to withdraw the plea would amount to nothing less than the impermissible elevation of procedure over justice." We do not agree.

It is more than clear from its ruling that the trial court was aware of, and was following, the governing legal principles. Most germane was the court's recognition that recanting sworn testimony is not accepted at face value, and is in practice heavily discounted. (*In re Roberts* (2003) 29 Cal.4th 726, 742-743 and decisions cited.) What was stated in *People v. Langlois* (1963) 220 Cal.App.2d 831, 834, is particularly apt to the situation here: "The fact that an important prosecution witness has recanted does not necessarily compel the granting of the motion. In such a case the trial judge is required to weigh the evidence offered in support of the motion, and he may reject it if he deems it unworthy of belief. [Citations] [¶] The offer of a witness . . . to retract his sworn testimony is always looked upon with suspicion. [Citations.]"

Moreover, in this case the trial court had the advantage of personally observing Wydermyer and assessing his credibility. Resolving that credibility issue adversely to [Davis] does not qualify as an abuse of discretion. (E.g., *People v. Fairbank* (1997) 16 Cal.4th 1223, 1254; *People v. Sawyer* (1967) 256 Cal.App.2d 66, 80.)

We also must note that Wydermyer did not truly recant, that is, he did not unequivocally and positively swear that [Davis] was not the shooter. He did not truly repudiate his prior testimony and identifications of [Davis] as his assailant. He did not exclude the possibility that [Davis] was in fact the man who pumped six bullets into his body. At best, he was allowing for the abstract possibility that a phantom third person was the one who shot him. Wydermyer never moved beyond the position that he *might* have been mistaken.

Boiled down to its essence, [Davis's] motion was based on the perception, seven months after [Davis] pleaded guilty, that the prosecution's case was less imposing than [Davis] originally thought. That is not uncommon: "'Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the

prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted.  Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made in the light of later events seem improvident, although they were perfectly sensible at the time.  The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant does not correctly assess every relevant factor entering his decision.'"  (*People v. Hunt* (1985) 174 Cal . App.3d 95, 103-104, quoting *Brady v. United States* (1970) 397 U.S. 742, 756-757.)

Although the trial court used the phrase "buyer's remorse" in reference to Wydermyer, it is more appropriately directed at [Davis].  With the passage of time, information came to [Davis] which led him to believe that he may have overestimated the strength of the prosecution's case against him.  However, as Division Three of this district noted, that "is hardly the type of mistake, ignorance or inadvertence which would permit the withdrawal of a guilty plea."  (*People v. Watts* (1977) 67 Cal.App.3d 173, 183; see *In re Brown* (1973) 9 Cal.3d 679, 686 ["It is not enough that a defendant assert that [he] has changed [his] mind as to the most expeditious course to follow."]; *In re Vargas* (2000) 83 Cal.App.4th 1125, 1143 ["Pleas are not set aside simply because defendants change their minds."].)

In light of the foregoing, we conclude that [Davis] has failed to demonstrate a clear abuse of discretion in the denial of his motion to set aside his guilty plea. (*People v. Weaver, supra,* 118 Cal.App.4th 131, 146; *People v. Castenada, supra,* 37 Cal.App .4th 1612, 1617.)[22]

Initially this Court notes that the standard of review of a denial of a motion to withdraw a guilty plea is the same in federal courts as it is in California, i.e., an abuse of discretion.[23] Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation,[24] the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.  Indeed, quite to the contrary, the Supreme Court has suggested that, while abuse of discretion is an appropriate standard on direct review, in

---

[22] *Davis*, 2008 WL 4763340 at 4-5.

[23] *United States v. Mayweather*, 634 F.3d 498, 504 (9th Cir. 2010).

[24] *See Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc).

a federal habeas proceeding it is not.[25]   Accordingly, to the extent that Davis contends that the

Solano County Superior Court abused its discretion, he has failed to raise a claim of

constitutional dimension cognizable in this Court.

Even if this Court were to reach the question, Davis would not prevail.  As the Solano

County Superior Court noted, the victim in this case did not actually recant his testimony.

Rather, he simply stated he was no longer as certain that Davis was the shooter as he was at the

time of his earlier statements and his testimony at the preliminary hearing.[26]   On the other hand,

the victim remained certain that the only other person who was known to have been present at the

time was definitely not the shooter.[27]

_____

[25] *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) ("It is not even whether it was an abuse of
discretion for her to have done so—the applicable standard on direct review. The question under
AEDPA is instead whether the determination of the Michigan Supreme Court that there was no
abuse of discretion was "an unreasonable application of . . . clearly established Federal law.
§ 2254(d)(1).").

[26] Contrary to Davis's contention, the victim did not state in his affidavit that Davis did
not shoot him.  What he said was:  "I have determined that I *may have been mistaken* in saying
and later testifying that Davis shot me.  I am now uncertain of my statements in this regard."
Docket No. 20-3 at 57 (emphasis added).  Nor did he so testify at the hearing on the motion to
withdraw the plea.

> THE COURT:  Sir, I'm looking at your declaration.  Among other things you
> say that "I have determined that I may have been mistaken in saying and later
> testifying that Mr. Davis shot me."
> Is that how you feel?
> [WYDERMYER]:  Yeah, because you know --
> THE COURT:  You don't know if you were mistaken, but you could have
> been mistaken; is that it?
> [WYDERMYER]:  Yeah.

Docket No. 30-3 at 68.

[27] Docket No. 30-3 at 70.

Davis advances no argument that the California rule that requires that a defendant must show good cause to withdraw his or her guilty plea by clear and convincing evidence violates the Constitution, and independent research by this Court has not revealed any such authority, controlling or otherwise.  The Solano County Superior Court, after holding a hearing at which the court heard the testimony of the allegedly recanting witness, found that at best the recantation does not establish that Davis was not the shooter, but that, in the abstract, he might not have been.  As the California Court of Appeal noted, while this may have weakened the prosecution's case, it did not eviscerate it.  But, perhaps more importantly, at no time has Davis asserted that he was not the shooter or that there was a third person, i.e., a phantom shooter, present at the time of the shooting.  The decision of the Solano County Superior Court was based at least in part on the credibility of the testimony of the allegedly recanting witness.  As was the California Court of Appeal, this Court is precluded from re-weighing the evidence or assessing credibility.[28] Therefore, this Court cannot find that the decision of the California court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[29]  Nor can this Court find that the state court unreasonably applied the correct legal principle to the facts of Davis's case within the scope of *Andrade-Williams-Landrigan-Richter*; i.e., the state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Davis is not entitled to relief under his third or fourth grounds.

---

[28] *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[29] 28 U.S.C. § 2254(d).

Ground 2:  Ineffective Assistance of Trial Counsel

Although it is difficult to ascertain precisely the omissions Davis contends constitute ineffective assistance of his trial counsel, it appears that, as he did before the California courts, he makes six contentions, including:  (1) that counsel made an inadequate investigation of the facts (referring to the victim's subsequent recantation); (2) that counsel was unprepared to go to trial (based upon counsel's request for a further continuance on the eve of trial that was denied); (3) that trial counsel failed to properly advise him of the elements necessary, i.e., that he [Davis] had to act with knowledge of the primary actor's criminal purpose;[30] (4) that counsel advised Davis to enter the plea without an adequate knowledge of the defenses available;[31] (5) that counsel provided inadequate information concerning the penal consequences of his plea; and (6) that trial counsel failed to advise Davis of his right to withdraw the plea if rejected by the trial judge.[32]  To the extent that Davis's claims of ineffective assistance of trial counsel predate the entry of the plea, they are foreclosed by the guilty plea.  The Supreme Court directly addressed the subject, stating:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.[33]

---

[30] A non-issue.  Davis was the primary actor, not an accomplice.

[31] Davis does not identify what those defenses might have been.

[32] Also a non-issue as the plea was not rejected by the trial court.

[33] *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"[34]  "In order to prevail on prejudice before the state court [Davis] had to demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"[35]  Thus, this Court will only address those factual allegations that affect the plea.

Davis, however, faces a high hurdle in seeking to overturn a guilty plea on collateral review.  As the Supreme Court held in *Mabry*:

> It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.  It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.  It is only when the consensual character of the plea is called into question that the validity of a guilty plea may be impaired.  *In Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), we stated the applicable standard:
>
> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).[36]

Twenty years later the Supreme Court explained:

---

[34] *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

[35] *Premo v. Moore*, 131 S. Ct. 733, 743 (2011) (quoting *Hill*, 474 U.S. at 59).

[36] *Mabry v. Johnson*, 467 U.S. 504, 508-09 (1984) (internal quotation marks and citations omitted), *disapproved on other grounds in Puckett v. United States*, 556 U.S. 129, 138 n.1 (2009).

[The Supreme Court] recently explained, in reversing a lower court determination that a guilty plea was not voluntary: "[T]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it." *United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (emphasis in original). We similarly observed in *Patterson*: "If [the defendant] . . . lacked a full and complete appreciation of all of the consequences flowing from his waiver, it does not defeat the State's showing that the information it provided to him satisfied the constitutional minimum." 487 U.S., at 294, 108 S.Ct. 2389 (internal quotation marks omitted).[37]

This Court must, therefore, analyze Davis's claims in that light, i.e., the effect of counsel's performance on the voluntariness of the guilty plea. Accordingly, the only issue properly before this Court is whether counsel was so ineffective in advising Davis to plead guilty that it rendered his plea unknowing, unintelligent, and involuntary.

Under *Strickland*, to demonstrate ineffective assistance of counsel, Davis must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[38] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[39] In *Hill*, the Supreme Court explained that a habeas petitioner must show that defense counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been

---

[37] *Iowa v. Tovar*, 541 U.S. 77, 92 (2004) (emphasis in the original).

[38] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[39] *Id*.

different.[40]  *Strickland* and its progeny do not mandate this court act as a "Monday morning quarterback" in reviewing tactical decisions.[41]  Indeed, the Supreme Court has admonished:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[42]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro, supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[43]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[44]

---

[40] *Hill*, 474 U.S. at 57.

[41] *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

[42] *Strickland*, 466 U.S. at 689 (internal citations and quotation marks omitted).

[43] *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

[44] *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

Davis raised his ineffective assistance of counsel claims in his state-court habeas proceeding. Both the Solano County Superior Court and the California Supreme Court summarily denied his petitions. A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[45] When there is no reasoned state court decision denying an issue presented to the state court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[46] "The presumption may be overcome when there is reason to think that some other explanation for the state court's decision is more likely."[47] Where the presumption applies, this Court must perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable.[48] In so doing, this Court presumes that the state court decision rested on federal grounds,[49] giving the presumed decision the same deference as a reasoned decision.[50] The scope of this review is for clear error of the state court ruling on the petition:

> [A]lthough we cannot undertake our review by analyzing the basis for the state court's decision, we can view it through the "objectively reasonable" lens ground by *Williams* . . . . Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required

---

[45] *Richter*, 131 S. Ct. at 785.

[46] *Id*. at 784-85.

[47] *Id.* at 785.

[48] *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005) (per curiam).

[49] *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989).

[50] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference).

to determine whether the state court clearly erred in its application of controlling federal law.  Only by that examination may we determine whether the state court's decision was objectively reasonable.[51]

"[A]lthough we independently review the record, we still defer to the state court's ultimate decision."[52]

The record reflects that on the date trial was to begin but before the jury was empaneled, the prosecution made a plea offer that Davis accepted.  Davis initialed and signed under penalty of perjury a Waiver of Constitutional Rights and Declaration in Support of Defendant's Motion to Change Plea in which he acknowledged the sentence he was to receive, admitted the facts contained in the transcript of the preliminary hearing, and that his counsel had read and explained the waiver to him.[53]  During the plea colloquy Davis admitted his guilt, acknowledged that he had discussed the matter with his counsel, understood the content of the Waiver he had signed, understood the sentence to be imposed and the basis for it, understood the sentence that might be imposed if he was found guilty after trial, and that he was entering the plea voluntarily.[54]

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.[55]

---

[51] *Delgado v. Lewis* (*Delgado II*), 223 F.3d 976, 982 (9th Cir. 2000) (internal citation omitted); *see also Lewis v. Mayle*, 391 F.3d 989, 996 (9th Cir. 2004).

[52] *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

[53] Docket No. 20-3 at 27-30.

[54] Docket No. 30-3 at 39-45.

[55] *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) (citing *Marichoba v. United States*, 368 U.S. 487, 495-96 (1962)).

It is evident that Davis's efforts to withdraw his plea are based solely upon the alleged recantation by the victim.  This alleged recantation did not occur until long after Davis had entered his plea and it had been accepted by the trial court.  As for his argument that trial counsel was unprepared, although it is not entirely clear, it appears the sole issue underlying the motion for a continuance that was denied concerned a claim of surprise, i.e., that an expert to be called by the prosecution would testify to the fact that cell phone calls made by Davis were made through a tower located in Vallejo, placing Davis there consistent with the victim's testimony.[56] In denying the motion, the trial court stated:  "I think your reason for the requested continuance, number one, could be completely irrelevant.  It could be, and its speculative at best.  So I'm going to deny your request for continuance."[57]

The insurmountable hurdle that Davis fails to clear is that his allegations that his trial counsel was ineffective either predated or followed the guilty plea, or, to the extent they may have affected the plea, are factually unsupported by the record.  Based upon the record before it, this Court cannot say that the assumed decision of the California Supreme Court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[58]  Nor, viewing the matter through the doubly-deferential lens of *Mirzayance-Richter*, can this Court find that the state court unreasonably applied the correct legal principle to the facts of Davis's case within the scope of

---

[56] Docket No. 30-2 at 24-26.

[57] Docket No. 30-2 at 28-29.

[58] 28 U.S.C. § 2254(d).

*Andrade-Williams-Landrigan-Richter*; i.e., the assumed state court decision was not more than incorrect or erroneous, its application of clearly established federal law was not objectively unreasonable.  Davis has failed to establish that "but for" trial counsel's alleged incompetence he would not have entered a guilty plea.  Davis is not entitled to relief under his second ground.

Ground 1: Ineffective Assistance of Appellate Counsel

Davis contends before this Court, as he did before the California Supreme Court in his state habeas petition, that appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel.  Davis also contends that appellate counsel was ineffective for failing to raise on direct appeal that the trial court abused its discretion in denying his motion to withdraw his guilty plea.  Davis's last contention is belied by the record; abuse of discretion was not only raised but directly addressed by the California Court of Appeal.  Thus, that contention is meritless.

As Davis correctly concedes, the failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[59]  Because, as noted above in connection with Davis's ineffective assistance of trial counsel claims, those claims are meritless, the failure of appellate counsel to raise them does not constitute ineffective assistance of counsel.  Davis is not entitled to relief under his first ground.

---

[59] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Miller v. Keeney*, 882 F.2d 1428, 1428 (9th Cir. 1989) (holding that appellate counsel's failure to raise a weak issue did not constitute ineffective counsel).

Motion to Extend Time to Reply

At Docket No. 37 Davis filed a motion for an extension of time within which to reply. The record reflects that Davis did reply to the answer. At Docket No. 26 Davis requested leave to supplement the Petition, which request was granted at Docket No. 34. In that Order, the Court granted Respondent thirty days within which to respond to the supplemental petition, if necessary. Respondent did not respond and the matter was deemed submitted. No further reply from Davis is necessary or appropriate. Accordingly, the motion at Docket No. 37 will be denied.

## V.  CONCLUSION AND ORDER

Davis is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the motion for an extension of time at Docket No. 37 is **DENIED.**

22

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[60]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[61]

The Clerk of the Court is to enter judgment accordingly.

Dated:  September 28, 2012.

$\underline{\hspace{3em}}$ /s/ James K. Singleton, Jr. $\underline{\hspace{3em}}$
JAMES K. SINGLETON, JR.
United States District Judge

---

[60] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[61] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.